Geraldine GARRISON, Administratrix of the Estate of Kenneth L. Garrison, Deceased, Plaintiff-Appellant,

v.

JERVIS B. WEBB COMPANY, Defendant-Appellee.

No. 76–2456.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1978.

Decided Aug. 14, 1978.

---

**63.** *See* note 37, *supra,* and accompanying text.

John Frith Stewart, Segal, Isenberg, Sales, Stewart & Nutt, Stephen J. Tillman, Louisville, Ky., for plaintiff-appellant.

David R. Monohan, Woodward, Hobson & Fulton, Fielden Woodward, Louisville, Ky., for defendant-appellee.

Before CELEBREZZE, ENGEL and MERRITT, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal involves a wrongful death action instituted in Kentucky state court and removed to federal court on the basis of diversity of citizenship. Plaintiff-appellant, Geraldine Garrison, is administratrix of the estate of her husband, Kenneth Garrison (decedent). The decedent was killed in a work-related accident while employed as an ironworker by the Austin Company (Austin), which was general contractor for the construction of a Clark Equipment Company (Clark) plant near Georgetown, Kentucky. Defendant-appellee, Jervis B. Webb Company (Webb), was a subcontractor. The district court directed a verdict for Webb at the close of all the evidence, reasoning that there had not been a sufficient showing of negligence on the part of Webb to send the case to the jury. We affirm.

Webb was a subcontractor responsible for the installation of a conveyor system in the Clark plant. The conveyor was to run, in part, over a large concrete pit in the floor of the plant. To support the conveyor at this point, Webb installed a long steel "header beam" between two large steel "truss beams" near the ceiling of the plant. The truss beams were parallel to one another and the header beam ran between them at a right angle and in the same horizontal plane as the truss beams. All these beams were roughly thirty feet above the bottom of the concrete pit, which was a few feet lower than the surrounding floor.

At the time of the accident, Webb had connected the header beam to the truss beams with steel clips. These clips consisted of steel plates above and below the header beam which plates were connected by several nuts and bolts. The tightening of the nuts and bolts served to clamp the header beam onto the truss beams. Webb had "tack welded"[1] the bottom portion of these clips to the header beam in order to facilitate attachment of the header beam to the truss beams in their elevated position by obviating having to hold onto the tack welded portions. The responsibility for holding the header beam in place, however, rested wholly on the steel clips, as tightened by the nuts and bolts, and the tack welding was only meant to facilitate installation.

Austin officials decided that the header beam should be moved about one foot along the truss beams. The decedent and another Austin employee undertook this task by removing some of the steel clips on the header beam and loosening the bolts on the remaining clips just enough so that the header beam would slide along the truss beams when struck with a large hammer. When the decedent so struck the header beam at one end, the tack weld between the remaining steel clips and the header beam broke. This caused the clip to separate from the header beam and the header beam thereby fell apart from the truss beam. The decedent, apparently believing the steel clips were welded to the header beam solidly enough to withstand his hammering, fell to his death in the concrete pit some thirty feet below.[2]

Appellant contends that the case should have gone to the jury on the issue of

---

1. "Tack weld" is a term used to describe a small weld, perhaps no more than one-half inch in diameter, designed to temporarily attach one piece of steel to another. It is often done intermittently along a meeting of two pieces of steel and is a weak weld not intended to ultimately bear significant weight or stress. It is to be distinguished from a "solid weld" or "structural weld" meant to create a permanent attachment of two pieces of steel which is as strong as the surrounding steel. A solid or structural weld is generally much larger than a tack weld, often being solid along the entire intersecting seam.

2. While the record is not entirely clear on the point, the decedent was apparently sitting on the header beam, which he was trying to move with his hammering, when that beam fell from the truss beam.

whether Webb was negligent in failing to solidly weld the clips to the header beam or alternatively whether, having tack welded the clips, Webb had the duty to warn foreseeable third parties, such as the decedent, of this fact. The district court, in directing a verdict for Webb, accepted Webb's theory of the case that the steel clips were properly installed by Webb in accordance with the construction specifications and that Austin had full knowledge that the clips were only tack welded to the header beam.[3] We

agree with the district court that a directed verdict for Webb was appropriate.[4]

As noted, appellant's case had two theories for recovery. The first was that Webb negligently and improperly installed the header beam by only tack welding the steel clips to the header beam rather than solidly welding them. The only evidence supporting this contention relates to a note, akin to a footnote, on a blueprint which depicted, *inter alia*, the clamp connection between

---

**3.** Formal findings of fact and conclusions of law were not required in this cause since Federal Rule of Civil Procedure 52(a) states that such "are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." The grant of a motion for a directed verdict would come within the "any other motion" language since Rule 41(b) concerns only involuntary dismissals in cases tried to the court. *See* Note of Advisory Committee to 1963 Amendment of Rule 41(b); 5 J. Moore, Moore's Federal Practice ¶ 41.01[12] (2d ed. 1977) [hereinafter "Moore's"]. While a directed verdict in a jury case pursuant to Rule 50(a) is very similar to an involuntary dismissal in a nonjury case pursuant to Rule 41(b), they are not identical. 5 Moore's ¶ 41.13[3]–[4]. This justifies requiring findings of fact and conclusions of law in the latter case but not the former. *See* Note of Advisory Committee to 1946 Amendment to Rule 41(b); 5 Moore's ¶ 41.01[5]–[7]. *See also* 5A Moore's ¶ 52.08.

While formal findings of fact and conclusions of law were not required herein, the district court nevertheless took the commendable step of rendering an opinion justifying its action. We believe this is the better practice since it facilitates appellate review and insures full consideration of the case by the district court. *Cf. Robin Products Co. v. Tomreck*, 465 F.2d 1193, 1196 (6th Cir. 1972). We thus encourage the district courts of this circuit to render opinions justifying their actions when granting motions for directed verdicts in jury cases under Rule 50(a). This would apply with equal force to granting motions for judgment n. o. v. under Rule 50(b), since they are legally equivalent to motions for directed verdicts. 5A Moore's ¶ 50.07[2]. This practice is also supported by the similarity of both motions to a motion for involuntary dismissal under Rule 41(b), the grant of which is required to be accompanied by findings of fact and conclusions of law.

We note that the opinion in this cause was rendered orally in chambers, and transcribed by the court reporter, and was essentially an informal colloquy between the district judge and counsel. We approve the practice of rendering transcribed oral opinions in appropriate cases. *See* Christensen, *A Modest Proposal for*

*Immeasurable Improvement*, 64 A.B.A.J. 693 (May, 1978). It must be remembered, however, that while oral opinions can be potential timesavers, they require great care to insure that the district court fully sets forth its reasoning both as to legal standards employed and the underlying factual basis.

**4.** While there is a split among the circuits on the issue, this circuit has long held that state law controls in a diversity case as to whether there was sufficient evidence presented to withstand a motion for a directed verdict or a motion for judgment n. o. v. *See,* most recently, *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975), *Chumbler v. McClure*, 505 F.2d 489, 491 (6th Cir. 1974), *and Moskowitz v. Peariso*, 458 F.2d 240, 244 (6th Cir. 1972). Other cases so holding, and contrary cases applying the federal standard, are collected in *Annot.*, 10 A.L.R.Fed. 451. *See generally* 5A Moore's ¶ 50.06 *and* C. Wright, Law of Federal Courts § 92, p. 404, (2d ed. 1970) [hereinafter "Wright"], both suggesting application of the federal rule is appropriate in diversity cases.

The law of Kentucky on the standard for granting a motion for a directed verdict has been variously stated. The general rule emerges, however, that a directed verdict should be granted when, drawing all inferences in favor of the nonmoving party, there is no substantial probative evidence which could support a verdict in the nonmoving party's favor and reasonable men could only conclude that the moving party was entitled to a verdict. *Spivey v. Sheeler*, 514 S.W.2d 667, 673 (Ky. 1974); *Perry v. Ernest R. Hamilton Associates, Inc.*, 485 S.W.2d 505, 508 (Ky.1972); *Burnett v. Ahlers*, 483 S.W.2d 153, 157 (Ky.1972); *Harris v. Cozatt, Inc.*, 427 S.W.2d 574, 575 (Ky.1968); *Current v. Columbia Gas of Kentucky, Inc.*, 383 S.W.2d 139, 142 (Ky.1964); *Lee v. Tucker*, 365 S.W.2d 849, 851 (Ky.1963); *Wadkin's Adm'x v. Chesapeake & Ohio Ry. Co.*, 298 S.W.2d 7, 9–10 (Ky.1956).

This standard, of course, is essentially the same as the federal standard, 5A Moore's ¶ 50.-02[1] *and* Wright § 94, pp. 415–16, so it is of little consequence whether we apply the state or federal standard in Kentucky diversity cases.

the header beam and truss beams in question. This note read: "All Connections To Be Welded Solid." Aside from introducing the blueprint itself and having several witnesses merely read this note, the only testimony favorable to appellant's case regarding this note came from one witness who testified that he would interpret the note to mean that Webb should have solidly welded the clips to the header beam. This witness, however, was not qualified as an expert in reading blueprints.[5] He also admitted that if all the clips had been welded solidly the header beam would not have moved at all along the truss beams. This completely destroyed the credibility of his testimony that the welds should have been solid since appellant concedes that the header beam had to be movable along the truss beams. Moreover, this testimony was squarely contradicted by several qualified witnesses, including some called by appellant and including the project engineer employed by Austin, who testified that Webb installed the header beam precisely as specified in the blueprint. They said that the note "All Connections To Be Welded Solid" did not apply to the clips in question because the blueprint clearly showed the use of nuts and bolts to tighten the clips in place.

■ The district court was thus faced with the question of whether Webb could be held liable when it installed the header beam precisely as called for in the blueprint, in the absence of any showing of negligent design on its part. While we have found no Kentucky cases directly on point, we believe that the Supreme Court of Kentucky would not sanction recovery against Webb under these circumstances. *See Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 201 (Ky.1976); *Hercules Powder Co. v. Hicks*, 453 S.W.2d 583, 590 (Ky. 1970). *See also Garrison v. Rohm and Haas Co.*, 492 F.2d 346, 350–51 (6th Cir. 1974).

■ Appellant's second theory of recovery is that, having only tack welded the clips, Webb had the duty to warn foreseeable third parties of this fact. Appellant, however, made no showing of an inadequate warning. Webb, on the other hand, put forward uncontradicted testimony from the project engineer employed by Austin that he knew that the clips had only been tack welded to the header beam and that this was appropriate. Thus, even assuming a warning was called for, the knowledge of the project engineer employed by Austin, the decedent's employer, was clearly sufficient warning under Kentucky law. *Hercules Powder Co. v. Hicks*, 453 S.W.2d 583, 590–91 (Ky.1970). *See also Garrison v. Rohm and Haas Co.*, 492 F.2d 346, 352 (6th Cir. 1974).

■ Appellant's reliance on Restatement of Torts § 388 [6] is misplaced. There

---

5. He was qualified as an expert in inspecting welding.

6. Restatement of Torts (Second) § 388:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

While appellant's brief cites the first Restatement, we prefer to quote the more recent Restatement (Second), which contains no pertinent changes.

It is appropriate for federal courts in diversity cases to look to the Restatements when there is no controlling state law on point when the state has indicated, as has Kentucky, that it considers the Restatements to be persuasive authority. *See, e. g., Jones v. Hutchinson Mfg., Inc.*, 502 S.W.2d 66, 69 (Ky.1973); *Hercules Powder Co. v. Hicks*, 453 S.W.2d 583, 587–88 (Ky.1970) (citing, *inter alia*, Restatement of Torts (Second) § 388); *Post v. American Cleaning Equipment Corp.*, 437 S.W.2d 516, 520 (Ky. 1968) (citing, *inter alia*, Restatement of Torts § 388); *Dealer's Transport Co. v. Battery Distributing Co.*, 402 S.W.2d 441, 446–47 (Ky. 1966); *C. D. Herme, Inc. v. R. C. Tway Co.*, 294 S.W.2d 534, 537 (Ky.1956).

was no evidence "that the chattel [was] or [was] likely to be dangerous for the use for which it [was] supplied." Restatement § 388(a). The header beam installation was not at all dangerous until altered by the decedent by removing several of the steel clips holding the header beam to the truss beams. Also, assuming it to be dangerous, Webb *had* "reason to believe that those for whose use the chattel [was] supplied [would] realize its dangerous condition," Restatement § 388(b), since Austin's project engineer was fully aware of the condition of the header beam and under Kentucky law that notice was sufficient. This knowledge by Austin's project engineer that the clips were only tack welded also means that Webb could not have been held liable for "fail[ing] to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Restatement § 388(c).

The judgment of the district court is affirmed.