Benito DADDI, Plaintiff-Appellant,

v.

UNITED OVERSEAS EXPORT LINES, INC., "ORIENTAL INVENTOR", Defendant-Appellee.

No. 143, Docket 81–7275.

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1981.

Decided March 16, 1982.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff-appellant.

Gregory W. O'Neill, New York City (Hill, Betts & Nash, New York City, on the brief), for defendant-appellee.

Before LUMBARD and VAN GRAAFEILAND, Circuit Judges, and BONSAL,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

On June 7, 1974, appellant Benito Daddi was working as a longshoreman aboard the *Oriental Inventor* which was docked in Brooklyn, New York. In the late afternoon, Daddi's stevedoring gang with the aid of a crane was unloading eighty-eight palletized crates of rubber that had been stacked three tiers high in one of the vessel's holds. Daddi was acting as the "line man" during the operation. In this capacity, Daddi would position himself on top of a targeted crate and attach the crane's lift lines. He would then move to another crate so that the attached crate could be lifted from the hold. By approximately 6:30 p. m., the stevedoring gang had worked down to the bottom tier of crates. Shortly thereafter, while Daddi was moving from one crate to another, he fell and injured his back.

After the accident, Daddi left the ship's hold and reported the accident to the stevedoring company's timekeeper. In response to the timekeeper's inquiries, Daddi stated that his foot had slipped between two crates. The timekeeper incorporated Daddi's statements into an accident report which Daddi signed. Daddi gave the same description of the accident to Vincent Speruggia, the stevedoring company's Superintendent. However, when Speruggia then conducted an investigation, he found that none of the other stevedores was even aware that there had been an accident. Three months later, Daddi told his attending physician that he had "stepped on a piece of dunnage which twisted under his foot." A short time later he told a second doctor that he "fell over a wooden plank" and a third doctor that he "fell over a wooden piece."

On December 5, 1975, Daddi brought suit in the United States District Court for the Eastern District of New York against appellee United Overseas Export Lines (United), the owner of the *Oriental Inventor.* The action was based on the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50. At trial, Daddi gave still another version of the accident. He testified that as he was backing away during the lift operation, the wooden slats of the crate upon which he was standing gave way and his foot dropped ten to twelve inches into the crate. Daddi also stated that the wooden slats appeared to be in bad condition, but that the crate looked normal prior to the accident. Finally, Daddi testified that an unidentified officer of the vessel previously had told the longshoremen to be careful in unloading the crates because they were not packed correctly.

As part of his case, Daddi introduced the deposition of R. S. Soerojo, the district manager for the Indonesian rubber company that had packed the crates in question. After discussing the quality of the wood used in making the crates, Mr. Soerojo described the crate packing process. Bales of rubber are placed inside a crate until the rubber extends fifteen inches above the crate's top. The rubber is then compressed to crate level by applying three tons of pressure for four

* Hon. Dudley B. Bonsal, District Judge of the Southern District of New York, sitting by designation.

days. When the rubber reaches the proper level, a flat wooden top is attached and steel bands are wound around the crate. The rubber's natural expansion then imbeds the top and bands into the crate's contents. Each loaded crate weighs 2500 pounds. According to Mr. Soerojo, quality checks are performed at every stage of the process.

After reading Mr. Soerojo's deposition into the record, Daddi introduced the deposition of Yip Ming Wang, Chief Officer of the *Oriental Inventor*. Mr. Wang testified as to the loading, voyage and unloading of the vessel. · He also testified that he personally had inspected each crate of rubber and that nothing appeared out of order. Daddi concluded his case by calling Rosario DiBennedetto as an expert on the loading and transportation of maritime cargo. Mr. Di-Bennedetto testified that a crate of rubber in which there was a ten to twelve inch empty space between the rubber and the crate top would be unacceptable for shipment. He stated that if a vessel's officers were aware of such a gap they would not accept the crate, because it would be crushed by cargo placed on top of it. Mr. DiBennedetto stated not once, but three times, that a crate with such a gap would be crushed by the weight of other cargo.

At the close of plaintiff's case, Judge Bramwell denied United's motion for a directed verdict. United then introduced the deposition of a Mr. Hafifuddin, the Assistant Ship Foreman for the stevedoring company that loaded the crates. Mr. Hafifuddin testified that he had inspected each crate while it was being loaded and that all the crates were in good condition. United also introduced the deposition of Zainal Abidin, the Indonesian stevedoring company's foreman. Mr. Abidin testified that he had walked over the top of the bottom tier of crates loaded in the ship's hold to make sure they were undamaged and arranged tightly. He said that he had never seen a palletized crate with a gap above the rubber during his eleven years as a ship foreman. He added that even if such a crate survived the packing process, it would be crushed instantly in the ship's hold when the second and third tier crates were loaded.

Upon resting its case, United renewed its motion for a directed verdict. Judge Bramwell again denied the motion, and the case went to jury, which returned a verdict in plaintiff's favor for $100,000.

In an opinion and order dated March 10, 1981, Judge Bramwell granted the defendant's motion for judgment n. o. v., ruling that, on the basis of the uncontroverted evidence, Daddi's version of the accident was a physical impossibility. Judge Bramwell held that the process by which the crates were packed precluded the possibility that Daddi's foot could have dropped into an empty space inside a crate. Assuming that somehow such a gap could have survived the packing process, the testimony was uncontradicted that the crate itself would not have withstood the two-month voyage under a crushing load of two and one-half tons.

We agree with Judge Bramwell, for the reasons stated in his opinion, that reasonable and fair minded men could only have rendered a verdict in favor of the defendant. *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167 (2d Cir. 1980). A jury's verdict may not stand when, as here, it conflicts with undisputed physical facts. *O'Connor v. Pennsylvania Railroad Co.*, 308 F.2d 911, 914 (2d Cir. 1962); *see Simblest v. Maynard*, 427 F.2d 1, 6–7 (2d Cir. 1970).

We reject appellant's argument, made for the first time in a supplemental reply brief in this Court, that the district court was without jurisdiction to grant defendant's motion for judgment n. o. v. because it was not made within the ten-day limitation period of Fed.R.Civ.P. 50(b). Defense counsel moved twice for a directed verdict. Although his intent may have been somewhat less than clear when he moved in open court on October 14, 1980 to set the verdict aside, he certainly made his wishes known nine days later when he moved to "[amend his] motion for Judgment N.O.V. made in open court on October 14, 1980 to include in the alternative, a

motion for a new trial." *See Warkentien v. Vondracek*, 633 F.2d 1, 2 n.1; (6th Cir. 1980); *United States v. Tappen*, 488 F.2d 142 n.1 (5th Cir. 1973).

The judgment of the district court is affirmed.