791 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,
v.
C. K. DIXON, JR. Defendant-Appellant.
 84-5919
 United States Court of Appeals, Sixth Circuit.
 4/29/86
 
 AFFIRMED
 E.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 Before: CONTIE and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant C. K. Dixon, Jr. appeals from the district court's entry of judgment notwithstanding the verdict in favor of the F.D.I.C. on the basis of 12 U.S.C. Sec. 1823(e) in this action for the collection of a debt.
 
 I.
 
 2
 On February 24, 1978, Red Chief Coal, Inc., and its owners, G. C. Kincer, Richard Kincer, Albert Kincer, and C. K. Dixon, borrowed the sum of $272,500 from the Mission State Bank. The collateral given for the loan was heavy equipment used for mining coal, and the owners were accommodation parties on the note. By the terms of the note, the debtors agreed to allow the bank to exchange or release the collateral without notice to the debtors, and without affecting their liability.
 
 
 3
 The debtors defaulted on the note after making one payment and subsequent efforts by a bank representative, Robert Koester, to collect the debt were unavailing. Subsequent to a meeting with the debtors, at which Koester was unsuccessful in collecting the debt, Koester was contacted by Rodney Taylor, who expressed an interest in obtaining the collateral securing the loan. At a meeting held on June 17, 1980, the Kincers, Koester, and Taylor reached an agreement whereby Taylor and Bluston Mining Company assumed $240,000 of the debtors' obligation in return for the collateral, and the principals of Red Chief, the three Kincers and appellant Dixon, were to divide the remaining liability on the original obligation. The original debtors were not released from their obligation on the note, except to the extent that payments were made on that obligation.
 
 
 4
 The Kincers maintained at trial that, in order to persuade the debtors to agree to this transaction, Koester secretly promised that the debtors, including appellant Dixon, would be released from their liability on the note as well as their liability under the guaranty agreement given in connection with the promissory note executed by Taylor. Dixon was not present at this meeting, nor did he sign any of the documents generated by the meeting.
 
 
 5
 On August 8, 1980, the lender, Mission State Bank, failed and the Kansas State Bank Commissioner asked that the F.D.I.C. be appointed receiver pursuant to 12 U.S.C. Sec. 1821(e). Certain assets were sold and certain liabilities were transferred to the Mission Bank. The remaining assets were then sold to the F.D.I.C. in its corporate capacity, including the note executed by the debtors.
 
 
 6
 On January 27, 1982, the F.D.I.C. filed a four-count complaint in the United States District Court for the Eastern District of Kentucky, Pikeville Division, seeking recovery against the debtors on the original note. The complaint also sought relief against Taylor and Bluston Mining on the Taylor note, against the Kincers on their guaranty agreement of the Taylor note, and on the individual notes executed in conjunction with the Taylor note.
 
 
 7
 The collateral securing the note was sold at public auction, and the net proceeds of $45,275 were applied to the amount owed by the debtors. A default judgment was entered against Taylor and Bluston Mining on June 7, 1983. Trial began on May 29, 1984. After the conclusion of proofs, and during the F.D.I.C.'s argument for a directed verdict, the Court raised the issue of whether F.D.I.C. was a holder in due course. This issue and the issue of the application of 12 U.S.C. Sec. 1823(e) were considered by the court, and the F.D.I.C.'s motion for a directed verdict was taken under advisement. Five special verdict questions were submitted to the jury. The jury found that defendants owed nothing under the original promissory note; that the Kincers were liable under their guaranty agreement of the Taylor note; that the Kincers were liable under the individual promissory notes; that the Kincers were fraudulently induced into executing the Taylor assumption transaction documents; and that the assumption transaction fully released all defendants from liability under the original promissory note. The district court declined to accept special verdict number five of the jury--that the assumption transaction released the defendants from their liability--and entered a judgment notwithstanding the special verdict in favor of the F.D.I.C., based on the effect of 12 U.S.C. Sec. 1823(e). Defendant Dixon appeals from that judgment.
 
 II.
 12 U.S.C. Sec. 1823(e) provides:
 
 8
 No agreement which tends to diminish or defeat the right, title or interest of the Corporation [the F.D.I.C.] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.
 
 
 9
 12 U.S.C. Sec. 1823(e) does not itself provide the F.D.I.C. with holder in due course status. F.D.I.C. v. Wood, 758 F.2d 156 (6th Cir. 1985). However, where there is an oral side agreement between the parties, such as an oral promise by the bank to make future loans, Sec. 1823(e) can be applied to make such an agreement unenforceable against the F.D.I.C., without finding that the F.D.I.C. has holder in due course status. F.D.I.C. v. Hatmaker, 756 F.2d 34, 37 (6th Cir. 1985). The written agreement between the bank, Taylor, Bluston Mining, and the Kincers expressly preserves the original parties' liability on the note. It is only by virtue of the claimed side agreement between the bank and the Kincers that the jury could have found that the assumption was intended to extinguish the liability of the original parties. Under Sec. 1823(e), such an unwritten agreement is not valid against the F.D.I.C., since it diminishes the rights of the F.D.I.C. to the assets represented by the loan agreement. Dixon's argument that the second loan constitutes a novation is without merit. The language of the loan agreement states that it does not extinguish the original debtors' liability, thus it cannot be a novation. To show that the second agreement did extinguish the original liability, Dixon must interpose the side agreement between the bank and the Kincers. Section 1823(e) does not allow that unwritten agreement to be enforced against the F.D.I.C.
 
 III.
 
 10
 Dixon maintains that the district court's entry of judgment notwithstanding the special verdict is contrary to the provisions of Fed. R. Civ. P. 50(b) which requires that a motion be made by one of the parties. The rule, in pertinent part, provides:
 
 
 11
 Rule 50. Motion for a Directed Verdict and for Judgment Notwithstanding the Verdict
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 (b) Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. . . .
 
 
 15
 Thirty-four years ago the United States Supreme Court held, in Johnson v. New York, New Haven & Hartford R. Co., 344 U.S. 48 (1952), that since the party in whose favor a judgment n.o.v. had been entered by the appellate court had not moved for such a judgment following announcement of the jury verdict, the appellate court was powerless to enter such a judgment and could only remand for a new trial. On the basis of that holding, the appellant asks us to set aside the judgment n.o.v. entered in plaintiff's favor in this case. Despite thirty years and more of scholarly criticism of the rule announced in Johnson, we are, nevertheless, bound to follow the holding of that case if its rule of law is controlling of the issue before us. We think it is not.
 
 
 16
 In Johnson, a wrongful death case against a railroad, following submission of all the evidence, the defendant moved for a directed verdict on the grounds that no negligence had been proven and that the deceased had been responsible for his own death. The trial court reserved decision on the motion and submitted the case to the jury which returned a verdict for the plaintiff. Ten days thereafter, the defendant moved to have the verdict set aside on the ground that it was excessive and contrary to the law, and contrary to the weight of the evidence. About two months later, the trial court denied the post-verdict motion and, in the same order, denied a pre-verdict motion to dismiss which had been taken under advisement. The United States Court of Appeals reversed, holding that the defendant's motion for directed verdict which had been taken under advisement should have been granted. In order to dispose of the matter, the appellate court granted a judgment notwithstanding the verdict. It was that action which was appealed in Johnson, and which resulted in reversal by the United States Supreme Court with announcement of the rule that an appellate court had no power to enter a judgment notwithstanding the verdict unless a motion for such relief had been made by one of the parties in the trial court.
 
 
 17
 The case before us is distinguishable from Johnson. First, the judgment n.o.v. in this case was granted by the trial court not by an appellate court.[1]
 
 
 18
 Second, and more significantly, we think, the case before us is distinguishable from Johnson because here the proceedings before the trial court constituted the essential equivalent of a motion and hearing for judgment notwithstanding the verdict. See Warkentien v. Vondracek, 633 F.2d 1, 2, n.1 (6th Cir. 1980).
 
 
 19
 It is evident from the record that immediately upon announcement by the jury of its answers to the five special verdict questions, the trial court was aware that the jury's findings were contrary to the law and that a verdict entered in conformity with those findings would violate Sec. 1823(e).
 
 
 20
 Rather than adjourn the proceedings and wait for plaintiff's counsel to prepare, file, serve, and notice for hearing a written motion for judgment notwithstanding the verdict, the trial judge, unquestionably sensitive to the requirements of administrative and judicial efficiency dictated by a crushing backlog of trial court litigation, proceeded directly to address the issue before him: the unlawfulness of the jury's verdict. The court stated:
 
 
 21
 Here is the feeling of the Court, gentlemen. The Court feels that the--that judgment should be denied as to Count 2 and Count 3 by reason of the fact that the jury made a finding of fact that fraud was involved with regard to those proceedings.
 
 
 22
 The Court feels that judgment ought to be entered for the plaintiff against all of the defendants individually and jointly upon Count 1, which would be the original promissory note which they executed, in an amount subject to the credits which are stated plus the interest which is accrued.
 
 
 23
 Now, the reason the Court will not accept the verdicts of the jury with regard to Count 1 is because of 12 U.S.C. Sec. 1823(e) which says that the defendants may not assert the affirmative defenses which they assert as to Count 1.
 
 
 24
 The court then announced an intention to enter judgment for plaintiffs notwithstanding the jury's legally erroneous responses to the verdict questions, but to delay the finality of that judgment for thirty days in order to give counsel for the defendants an opportunity 'to submit to me a memorandum as to why the judgment should not become final.'
 
 
 25
 From a reading of the record of the lengthy colloquy between the court and counsel which followed the court's statement of intention to render a verdict for the plaintiffs, it is plain that all were aware that the court intended, unless dissuaded by the argument of defense counsel, to enter a judgment n.o.v. because the jury verdict was unlawful under Sec. 1823(e). The colloquy was the essential equivalent of a hearing on a motion for judgment n.o.v.; the court asking rhetorically whether it wasn't clear that the provisions of Sec. 1823(e) precluded, as a matter of law, the entry of a verdict in conformity with the jury's answers to the special verdict questions are required entry of a judgment notwithstanding that verdict for the plaintiff, and the defendant insisting that, on the facts, the statutory bar of Sec. 1823(e) should not be controlling.
 
 
 26
 There is no question that defense counsel was aware that it was the court's intention to enter a judgment notwithstanding the verdict, but one whose finality would be deferred for thirty days to afford defense counsel even further opportunity to consider the propriety of such action and to be heard on the matter.[2]
 
 
 27
 To accept the defendant's argument that the court was powerless to set aside the jury's unlawful verdict and enter instead an unlawful judgment simply because the plaintiff's counsel did not utter the Rule 50(b) formula language asking for a judgment n.o.v., would effectively reduce the office of the trial judge in this case to that of a mere clerk, bound to ignore the law of which he was aware because it was not superfluously brought to his attention by counsel. We think substantial justice does not depend upon such a procedural incantation by plaintiff's counsel. All parties were aware of what was taking place: the court entered only a provisional judgment allowing the parties thirty days to submit memoranda arguing that the judgment should not become final. Given the factual situation before him, the trial judge was entitled to react to the erroneous decision of the jury by refusing to accept the special verdict based on a solid application of the law. The court's entry of a provisional judgment, following a lengthy colloquy concerning the substantive merits of the only basis upon which a judgment notwithstanding the verdict could be entertained, was the equivalent of requiring plaintiff's counsel to move for a judgment notwithstanding the verdict. At that point, there would have been no purpose served by requiring plaintiff to retire to his office in order to prepare and notice for rehearing a written motion for the relief counsel and the court had considered at length and would, at defense counsel's election, consider once again within the ensuing thirty days.
 
 
 28
 In the Circumstances, we are not required to construe Rule 50(b) as requiring a written motion. The judgment of the district court is affirmed.
 
 
 
 [1]
 We are aware that in Johnson, Justice Black stated:
 On several recent occasions we have considered Rule 50(b). We have said that in the absence of a motion for judgment notwithstanding the verdict made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment. Cone v. West Virginia Pulp & Paper Co. 330 US 212, 91 L ed 849, 67 S Ct 752. We repeated that construction of the rule in Globe Liquor Co. v. San Romain, 332 US 571, 92 L ed 177, 68 S Ct 246, and reemphasized it in Fountain v. Filson, 336 US 681, 93 L ed 971, 69 S Ct 754. That, despite the court's earlier statement of the issue the court was addressing:
 Whether the Court of Appeals could direct such a judgment consistently with Rule 50(b) of the Federal Rules of Civil Procedure is the single question we granted certiorari to review.
 
 
 [344]
 US at 50. (Emphasis added, footnote omitted.)
 
 
 [2]
 Defense counsel had been alerted to the argument that Sec. 1823(e) may have been an obstacle to one of its defenses since the plaintiff moved for a directed verdict on that ground at the close of all the proofs in the case. Moreover, during the colloquy with the trial court after the jury was discharged, defense counsel stated:
 Your honor, I guess I'm kind of confused. But if I understand the Court's reling, you are actually giving the plaintiff a judgment n.o.v.
 THE COURT: Right.