Richard Lee CALHOUN,
Plaintiff-Appellant,

v.

HONDA MOTOR COMPANY, LTD. and
American Honda Motor Company,
Defendants-Appellees.

No. 82–5512.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 26, 1984.

Decided June 28, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 9, 1984.

Charles Chaney [Lead Counsel], argued, Paducah, Ky., Terry Wells, Smithland, Ky., for plaintiff-appellant.

Thomas B. Russell, Richard C. Roberts, [Lead], argued, Jonathan Freed, Boehl, Stopher, Graves & Deindoerfer, Paducah, Ky., for defendants-appellees.

Before KEITH and KRUPANSKY, Circuit Judges, and WEICK, Senior Circuit Judge.

KEITH, Circuit Judge.

This diversity case arises from injuries received by plaintiff's son who rear-ended a stopped truck while operating his Honda 750 CB Motorcycle. Plaintiff brought suit alleging that a brake defect in the motorcycle was the proximate cause of the collision. A jury awarded a verdict to the plaintiff which was superseded by the trial judge's grant of a judgment notwithstanding the verdict (JNOV). The trial judge concluded that plaintiff had failed to establish a prima-facie case under Kentucky's strict liability law. In the event this Court reversed the JNOV, the trial judge granted a new trial to plaintiff, based on the trial court's belief that it was error to allow into evidence a recall letter issued by Honda. For the reasons set forth below, the district court's grant of JNOV is affirmed.

## I. Facts

On July 18, 1978 plaintiff, Richard Calhoun was driving his Honda 750 CB motorcycle to work when he collided with the rear of a stationary tractor trailer truck. There were no witnesses to the accident and as a result of his injuries Calhoun does not recall what happened. A Kentucky state policeman was called to the scene and he later testified that the motorcycle had

left forty feet of skid marks on the pavement.

Plaintiff filed an action against Honda alleging strict liability for his injuries under Restatement (Second) of Torts § 402A (1974). The alleged product defect was poor wet braking performance due to a design defect present in all 1977 Honda 750 CB motorcycles. In support of his allegation, plaintiff relied upon a recall letter issued by Honda five months prior to the accident. The letter stated that the performance of the rear brake pad was reduced by heavy rain conditions. Although it had not rained the day of the accident, plaintiff had visited a car wash approximately thirty minutes prior to the collision.

In the pretrial order, Honda challenged the admissibility of the recall letter. A hearing was held in chambers. Both parties had already briefed the court on this issue and the trial judge ruled that the letter could go into evidence. Plaintiff took a deposition of Honda's Vice President for Legal Affairs, Doug Somers. Somers stated that the recall was a result of customer complaints, but that Honda's testing was not duplicative of these complaints. Honda found that the efficiency of the brakes was reduced by heavy rain conditions, which resulted in a longer stopping distance. To correct this problem, grooves were cut into the brake pads which allowed the captured water between the disc and puck of the brake to escape as pressure was applied.

After placing the Somers deposition into evidence, plaintiff called his expert witness, Stanley Klein, to testify. The witness read the recall letter into evidence. He testified he had examined the motorcycle after the accident. In response to trial counsel's question as to what in his opinion was the cause of the accident, he stated:

A. [M]y opinion as to the cause of the accident was uncontrolled braking performance which caused the motorcycle's brakes to lock up and the driver, lose steering control, an unexpected property of the braking performance, I would characterize it.

Q. What is that performance related to in terms of this particular motorcycle?

A. It is related to the dynamics of the braking characteristics in terms of braking, the characteristics of the brakes as related to the brake pedal pressure. In this case, a characteristic which shows up when the brake surfaces or pad surfaces are wet, namely, ununiform braking pressure, a loss of braking effectiveness until the brakes dry out, and during that time, and it is an indeterminate time when the initial braking effectiveness requires increased pedal pressure, and after an indeterminate period of time the brakes suddenly regain their normal effectiveness, and unless there is a sudden compensation for that in the pedal pressure the brakes lock up causing the vehicle to go into a skid, and it is this unanticipated characteristic that causes the problem. The inability of the operator to determine just at what point to release the pressure or to gradually release the pressure so as to maintain a constant friction characteristic or braking characteristic, I should say, and uniform braking effectiveness. It is an erratic condition that exists when the brake pads are wet. (Trial transcript at 31, 32).

On cross-examination Klein was asked if he had an opinion as to whether the brakes were wet at the time of the accident. He replied:

A. I do.

Q. What is that based on?

A. It is based on the fact that they were washed with a high-pressure hose just a short distance or short time interval prior to the accident, and a mixture of soap and wax and water .... (Transcript at 21, 40).

Honda's experts, William Otto and C. Bruce Gambardella testified they conducted tests which simulated the events leading

up to the accident. Using an identical make of motorcycle with rear brake pads taken from Calhoun's bike, they attached instruments to the motorcycle which measured the pressure the rider would apply to the brakes and the corresponding deceleration. Prior to testing the bike they took it to a car wash and applied water directly on the rear brake. After driving the motorcycle at forty-five miles an hour and applying the rear brake with varying intensity, Otto testified at trial:

1. I found no significant difference in the rear brake performance between the pre-wash and post-wash. (Transcript 50–17).

2. On the pre-wash test, at 400 PSI, the deceleration was 11 to 12 feet per second, per second; on the post wash test the deceleration was 10 to 11 feet per second, per second, which is within the accuracy of the test. (Transcript 87–12).

3. There were no control problems. (transcript 87–17).

The purpose of this test was not to gauge stopping distances, but rather to measure the rate of deceleration when the rear brake was applied and to determine, after the wash sequence, whether the brakes failed to catch.

Gambardella also testified that considering how plaintiff had operated the motorcycle prior to the accident, there was no way that the condition of "heavy rain" mentioned in the recall letter could have been present. "A little bit of water just won't do it." (Transcript at 38–9).

At the conclusion of all evidence, Honda made a motion for a directed verdict which was denied. The jury found for plaintiff and awarded him $1,250,000.

Nine months later, the district court granted Honda a judgment notwithstand-ing the verdict or a new trial if this court reversed the judgment notwithstanding the verdict. It is from this order that plaintiff appeals.

## II. Judgment Notwithstanding the Verdict

Calhoun argues that the district court's grant of a judgment notwithstanding the verdict was erroneous because the jury's verdict was supported by substantial evidence. Regretfully, we disagree.

■ A judgment notwithstanding the verdict has long been recognized as the legal equivalent of a directed verdict and both are governed by the same standards. *See Warkentien v. Vondracek,* 633 F.2d 1, 7 (6th Cir.1980); *Garrison v. Webb Co.,* 583 F.2d 258, 261 (6th Cir.1978). In a diversity case our Circuit looks to state law in determining whether there was sufficient evidence presented to withstand a motion for judgment notwithstanding the verdict or directed verdict. *Garrison v. Webb, supra; O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975); *Chumbler v. McClure,* 505 F.2d 489, 491 (6th Cir.1974). To determine the sufficiency of the evidence under the law of Kentucky, "the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion and a verdict should not be directed unless the evidence is insufficient to sustain the verdict." *Spivey v. Sheeler,* 514 S.W.2d 667, 673 (Ky.1974). *See also Perry v. Ernest R. Hamilton Assocs., Inc.,* 485 S.W.2d 505 (Ky.1972).

### A. The Evidence Did Not Support the Verdict Because Plaintiff Failed to Establish Causation.

■ The jury found Honda liable for Calhoun's injuries on the theory of strict liability in torts. Restatement (Second) of Torts § 402A.[1] In order to find a manufacturer

---

1. Restatement (Second) of Torts § 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule state in Subsection (1) applies although

liable for injury sustained by his product, the jury must have found that the product in question was defective and that this defect was the cause of plaintiff's injury.

Calhoun alleges that there was a defect in the rear brake of the motorcycle. Although Calhoun cannot remember what took place because of his injuries, he hypothesized that when he applied the brakes they did not perform properly. He claims this failure was the result of the brake pads becoming wet when he took his motorcycle to a car wash.

Plaintiff relied upon a recall letter sent by Honda to all owners of Honda 750 CB motorcycles as proof of a braking defect. The letter stated:

> Honda Motor Co., Ltd., has determined that a defect which related to motor vehicle safety exists in the rear brake pads of certain Honda motorcycles.
>
> When the rear disc brake is applied during operation in heavy rain, there may be noticeable initial reduction in effectiveness of the brake followed by gradual recovery to normal, dry condition effectiveness. If pedal force is not increased to compensate for the reduced initial effectiveness, a longer stopping distance will result. If pedal force is increased to compensate for the reduced initial effectiveness and then maintained despite the recovery of the brake, available tire traction may be exceeded, resulting in skidding of the rear wheel. If the rear wheel remains in a skidding condition, loss of control and vehicle crash can occur. (Plaintiff's Exhibit # 5).

 Although it was reversible error to admit this letter into evidence,[2] if we were to assume arguendo that the letter was admissible and established the existence of a defect, Calhoun failed to show where the defect was the cause of the accident. Causation is an element which may be proved either by direct or circumstantial evidence.

However, if a party seeks to establish causation by circumstantial evidence "the evidence must be sufficient to tilt the balance from possibility to probability." *Perkins v. Trailco Mfg. & Sales Co.,* 613 S.W.2d 855 (Ky.1981); *Midwestern V.W. Corp. v. Ringley,* 503 S.W.2d 745 (Ky.1973); *Fields v. Western Kentucky Gas Co.,* 478 S.W.2d 20 (Ky.1972); *Holbrook v. Rose,* 458 S.W.2d 155 (Ky.1970).

In *Perkins v. Trailco Mfg. & Sales Co., supra,* the plaintiff was injured when in the process of operating a dump truck it overturned. He brought an action based on products liability and alleged that a defect in the truck's hydraulic hoist assembly caused his injury. The trial court directed a verdict on grounds that plaintiff had failed to establish causation. The Kentucky Supreme Court reversed. The court found that although plaintiff had failed to submit direct proof of a specific defect, he had successfully negated other possible causes for the trailer's failure to function properly. Therefore, a reasonable inference of probability rather than a mere possibility of respondent's culpability existed. 613 S.W.2d at 857–58.

By contrast, where an accident could have resulted for any number of reasons, the plaintiff has failed to establish the necessary proximate cause. Plaintiff, in *Midwestern V.W. v. Ringley, supra,* brought a suit in strict liability against the manufacturer of her Volkswagen. Plaintiff claimed that as she was driving along a wet road she attempted to apply her brakes but the right front wheel grabbed, causing her to spin out of control. On three previous occasions plaintiff had taken her car to the dealer's service department for a condition she described as "pulling to the right", whenever she applied the brakes. Each time the service department told her the problem had been repaired. After the accident, the problem was diagnosed as an "out of round" right front disc brake.

(a) the seller has exercised all possible care in preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**2.** *See* discussion, Part III *infra.*

Plaintiff claimed this was a defect in the manufacturing process and the cause of the accident. The testimony at trial, however, indicated that the car could have pulled to the right for any number of reasons:

> [a]ll of Wanda's witnesses testified that an "out of round" brake drum on the right front would cause the automobile to pull to the right when the brakes were applied. On cross-examination they testified that dirt and dust in the left brake lining would cause the automobile to pull to the right. They further testified on cross-examination that water in the left brake lining would cause the automobile to pull to the right; that improper adjustment of the right-front brake drum would cause the automobile to pull to the right. There was testimony by one of the witnesses that an examination of the right-front brake after the accident revealed that it was adjusted too tightly. Wanda's witnesses further testified on cross-examination that improper tire pressure and improper alignment could cause pulling.

503 S.W.2d at 747.

The Kentucky Court of Appeals reversed the trial judge's verdict in favor of plaintiff because the "plaintiff had failed to prove that the defect in manufacturing was the probable cause of the accident." *Id.*

Of course a plaintiff need not establish beyond all doubt a specific cause of an accident. For example, in *Fields v. Western Kentucky Gas, supra,* the plaintiff was injured when, in the process of laying sewer pipes underground, he lit a match and an explosion occurred. The plaintiff alleged that the probable cause of the accident was the explosion of natural gas, resulting from a leak in defendants gas company's line. The court, in finding the existence of probable cause, stated:

> [t]he plaintiff need not establish a case beyond a reasonable doubt. Although a jury may not be permitted to speculate when the probabilities of an event's having happened in one of two or more ways are equal and there is no evidence as to

which way it did happen, it is neither legal "speculation" nor "conjecture" when a jury finds as a fact that an event happened by reason of a particular cause when the evidence on behalf of a party, if believed, is sufficient to show that it is more likely than not that the event occurred as a result of the cause so found.

478 S.W.2d at 22.

Calhoun's evidence never went further than to show that the claimed defect was a possible, not probable cause of the collision. This is insufficient to establish liability. The recall letter stated that the motorcycle's braking performance was reduced by heavy rain. However, it was not raining the day of the accident nor did plaintiff successfully prove that washing the motorcycle at a car wash was tantamount to a condition of heavy rain.

### B. The Expert's Testimony Was Insufficient to Establish Causation.

Although plaintiff's expert opined that the brakes were wet at the time of the accident, the evidence does not support his conclusion.

Before giving his testimony as to the cause of the accident, Stanley Klein, a consulting engineer, related that he had investigated motorcycle safety in the past. He stated that he had viewed the motorcycle after the accident and was aware of the events preceding the accident including the visit to the car wash. Based upon his engineering experience, education and the investigation of the accident, he concluded that plaintiff's motorcycle deviated from generally accepted standards of safety engineering practice and that the cause of the accident was uncontrolled braking performance which led to the brakes locking up. Klein testified under cross-examination that he assumed that the brakes were wet when applied by Calhoun due to the fact that the motorcycle had been washed some time before hand. His assumption, however, is not supported by the type of evidence necessary to reach this conclusion. For example, he did not know the amount of time that passed from when plaintiff

washed his bike until he had his accident. He did not know how many stops plaintiff made before the accident. He did not know the material out of which the brake pad was made and therefore did not know the brake pad's drying time. Without knowledge of these facts, his assumption that the brakes were wet and therefore in a condition equivalent to that created by heavy rain, is baseless. An expert's testimony which expresses an opinion must be based on the evidence. As the court said in *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.1976), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976): "[t]here must, of course, be sufficient facts already in evidence or disclosed by the witness as a result of his investigation to take the testimony out of the realm of guesswork and speculation." 529 F.2d at 261.

Also, the evidence presented by Honda's experts did not aid plaintiff in establishing causation. To the contrary, their testimony supported an inference that the alleged defect was *not* the proximate cause of the accident. Honda's experts performed certain tests using a motorcycle identical to plaintiff's. The experts placed the brake pads taken from the rear wheel of Calhoun's motorcycle onto the demonstration motorcycle. They applied a mixture from the car wash directly onto the rear wheel and then tested the brake deceleration. The same test was again performed, minus the washing. According to expert Gambardella, "there was no significant difference in the rear brake performance between the pre-wash and post-wash." (Transcript at 50–17). "There were no control problems." (Transcript at 87–17).

█ Although it is within the jury's province to determine which expert to believe, plaintiff's expert's opinion as to the cause of the accident was supported by nothing more than conjecture and supposition. It was not based upon evidence which entitled it to be credited by the jury.

Unfortunately, plaintiff does not recall the accident and there were no witnesses. Calhoun relies upon the fact that there were forty feet of skid marks which proved

that he applied his brakes before the collision. These skid marks however are not dispositive of a brake defect. It is just as probable that they were the result of inattentiveness, as of brake failure. This fact was brought out during cross-examination of Mr. Klein:

Q. But you don't know whether it was [rear brake lock up which caused the accident] as opposed to Mr. Calhoun just not reacting to the situation, do you?

A. I have no way of knowing. (Transcript at 46–10).

Mr. Klein surmised that the brakes must have malfunctioned because failure to pay attention would have been suicidal. Such an assumption, although possessing a certain common sense appeal, is insufficient to prove that the defect was the probable cause of the accident. Mr. Klein, on cross-examination, also conceded that it would have been possible for the motorcycle to have left forty feet of skid marks with perfectly dry brakes. (Transcript at 40).

The record reveals that very little is known about this tragic accident. It was estimated that approximately twenty minutes passed from the time plaintiff left the car wash until he had his accident. After leaving the car wash he drove to his aunt's house. The motorcycle sat outside his aunt's house for twenty minutes while he went inside to change clothes. Honda's expert, who retraced plaintiff's route, estimated he applied his brakes at least two times before the accident. Calhoun's mother estimated that it was several miles from the aunt's house to the scene of the accident; part of this distance retraced the route Calhoun had taken from the car wash. There was undisputed testimony at trial that the brake pads were in constant contact with the discs and therefore would be rubbed dry in approximately 125 feet. It would seem highly unlikely that the brake pads would still be wet after the aforementioned sequence of events. Even more unlikely is the possibility that they would be as wet as pads which were exposed to heavy rain conditions.

The evidence in this case has never risen to the level of establishing that the alleged defect was the probable cause of the accident. At best, it was a possible cause in a series of possibilities, of which plaintiff's inattentiveness cannot be excluded. Simply establishing a defect as the possible cause of an accident is not, however, sufficient to prove liability. The law in this area is clear. In *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745, 747 (Ky.1973), the Court said:

> [a]lthough the jury may draw reasonable inferences from the evidence of a defect in manufacturing, it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the "probable" cause of the accident as distinguished from a "possible" cause among other possibilities; otherwise, the jury verdict is based on speculation and surmise.

Plaintiff failed to prove that the defect was the proximate cause of the accident and therefore the jury's verdict in his favor was not supported by the evidence.

This decision is a difficult one for our Court. It is not without heartfelt sympathy for Mr. Calhoun that we affirm the district court. We realize that as a result of his injury, plaintiff is of unsound mind and may be unable to care for himself the remainder of his days. However, the evidence failed to establish that the alleged defect was anything but a possible cause of his injury. Without more our hands are tied. Therefore, taking all evidence in the light most favorable to the party against whom the motion was made and giving the non-moving party the benefit of all favorable inferences, *Warkentien v. Vondracek*, 633 F.2d at 6, the JNOV is affirmed.

### III. New Trial

The trial judge's opinion stated that in the event our Court reversed the grant of JNOV, then defendants should be given a new trial. The judge's conditional grant was based on his belief that it was prejudicial error to allow the recall letter into evidence. Although it is unnecessary for us to address the admissibility of this letter since we affirm the JNOV, we will discuss this issue briefly.

Weighing the probative value of evidence against its possible prejudicial effect is committed to the discretion of the trial judge. *Farner v. Paccar*, 562 F.2d 518, 528 (8th Cir.1977). Our Court will not reverse the trial judge's ruling unless it is error which affects a substantial right of a party. Fed.R.Evid. 103.

The trial judge was not in error in ruling this letter inadmissible both on grounds of irrelevancy and prejudice. In a pretrial memorandum, Honda argued that the recall letter should not be admitted into evidence. In a conference on the day of trial, the district court ruled that the recall letter could go into evidence. Nine months later, in his order granting Honda a JNOV the district court ruled that it was improper to allow this letter into evidence because plaintiff failed to establish its relevancy and that the letter was prejudicial to Honda. We agree.

The recall letter was placed into evidence before independent evidence as to defect and causation were established. As we have already discussed, plaintiff failed to show where the conditions described in the letter were present when plaintiff had his accident. Failure to establish this fact made the letter irrelevant. *Farner v. Paccar*, 562 F.2d 518, 525–26 (8th Cir.1977).

In *Farner* the court upheld the admission of a recall letter into evidence, where a sufficient foundation had been laid prior to the admission. The court noted:

> At the time of the admission of the Stephens' memoranda, the plaintiff had established that the Farner truck was equipped with an air leaf suspension system; and that prior to the fatal crash, two of its springs had broken. There was also the testimony of two local truckers that while driving Peterbilt trucks similar to the Farner truck, they experienced spring failure and loss of vehicle control. More than fifty warranty claims received by Peterbilt during 1969 and 1970 for spring breakage in air

leaf suspension trucks were introduced. These facts clearly provided sufficient foundation for the admission of the Stephens' memoranda in which Peterbilt's chief engineer in charge of the development of the air leaf suspension system discussed tests of the springs conducted by Peterbilt and possible causes for their "extraordinary failure rates."

562 F.2d at 525–26.

Calhoun argues that the purpose of submitting the recall letter into evidence was not to prove causation, but rather to establish the existence of a defect. Granted some courts have held recall letters admissible as some evidence that the defect existed when the product left the manufacturer. In *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 58 (Okl.1976) the court said, "where the plaintiff shows independently there is such a defect, the dangers inherent in recall evidence are small and the introduction of a recall letter does not constitute reversible error." However, Calhoun never submitted evidence independent of the recall letter or campaign which would have established the existence of a defect. Moreover, as stated in the recall letter, the problems created by the defect in the pads were dependent upon brake application under certain conditions. Plaintiff's failure to establish that these conditions were present rendered the question of defect irrelevant.

Finally, to allow this letter into evidence worked a grave prejudice to defendant Honda. Its admission into evidence may have been interpreted by the jury as a ruling by the court that car washing had the same effect as operating under heavy rain. Such an inference is not supported by the evidence. Accordingly, the judgment of the Honorable Edward H. Johnstone of the United States District Court for the Western District of Kentucky, is in all respects, Affirmed.