**Ronald W. CONNER and/or Beverly B. Conner, Plaintiff-Appellee, Cross-Appellant,**

v.

**SHELTER MUTUAL INSURANCE CO., Defendant-Appellant, Cross-Appellee.**

Nos. 84–5837, 84–5851.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 1, 1985.
Decided Dec. 18, 1985.

Richard C. Roberts, argued, Whitlow, Roberts, Houston, Russell, Paducah, Ky., for defendant-appellant, cross-appellee.

Charles A. Williams, Williams, Housman & Sparks, David Sparks, argued, Paducah, Ky., for plaintiff-appellee; cross-appellant.

Before KRUPANSKY and MILBURN, Circuit Judges, and NEESE,* Senior District Judge.

PER CURIAM.

Defendant appealed and plaintiffs cross-appealed from a judgment entered in favor of plaintiffs and from partial judgment notwithstanding the verdict in this action on a homeowners insurance policy.

Defendant, Shelter Mutual Insurance Company (Shelter), issued Ronald and Beverly Conner a homeowners policy in 1976 which it renewed annually through 1981. On October 3, 1981, fire damaged the Conners' home and destroyed its contents. After the Conners submitted a claim, Shelter conducted an investigation which disclosed that, contrary to his statements on his application for insurance, Ronald Conner (Conner) had been convicted of several crimes.[1] Shelter disclaimed the policy coverage, asserting that Conner had made material misrepresentations on his applications for insurance that rendered the policy void *ab initio* under the terms of the policy and K.R.S. 304.14–110. The Conners commenced this action against Shelter seeking damages in the amount of the insurance coverage and compensatory damages for Shelter's alleged bad faith refusal to pay

the claim. The parties stipulated that the Conners' loss exceeded the amount of coverage. The case was tried before a jury on February 8 and 9, 1984.

Under Kentucky law, a misrepresentation voids an insurance policy if the misrepresentation is "material" to the acceptance of risk or if the insurance company would not have issued the policy if the true facts were known. K.R.S. 304.14–110.[2] The court submitted the following issues to the jury: (1) whether the misrepresentation was material to Shelter's acceptance of risk; (2) whether Shelter would not have issued the policy had it known of the misstatement; and (3) whether Shelter's refusal to honor the claim constituted bad faith. The court refused to instruct the jury on plaintiffs' claim for punitive damages.

The jury concluded that Shelter would have issued the policy even with knowledge of the true facts. The district court accordingly entered a verdict in favor of the Conners on the policy. The jury also determined that Shelter acted in bad faith in refusing to pay the claim and awarded the Conners an additional $20,000 in damages.

Shelter moved for judgment notwithstanding the verdict on both issues. The district court, in a memorandum opinion

---

* Hon. C.G. Neese, Senior (Retired) District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. The application contained the question, "[h]ave you or any member of your household ever been convicted of a crime?" Ronald Conner responded "no" notwithstanding the fact that he had been convicted of eight crimes prior to 1976. The parties stipulated that Ronald Conner had been convicted of the following crimes

| DATE OF CONVICTION | CRIME |
| --- | --- |
| 1. February 21, 1968 | Larceny of an Automobile |
| 2. February 27, 1968 | Speeding |
| 3. December 1, 1969 | Uttering worthless check |
| 4. December 1, 1969 | Uttering worthless check |
| 5. December 1, 1969 | Uttering worthless check |
| 6. December 1, 1969 | Uttering worthless check |
| 7. November 16, 1970 | Speeding |
| 8. June 7, 1973 | Cold checking |
| 9. June 7, 1973 | Grand Larceny of automobile |
| 10. June 6, 1974 | Escape from jail |

2. K.R.S. 304.14–110 provides:

**304.14–110 Representations in applications**

All statements and descriptions in any application for an insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent, or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

published at 600 F.Supp. 24 (W.D.Ky.1984), denied the motion as to the policy proceeds, concluding that the evidence supported the jury's verdict that Shelter would have issued the policy even with knowledge of the misrepresentation. *Id.* at 27. The district court granted judgment notwithstanding the verdict on the issue of bad faith, stating that it should have directed a verdict against the Conners on that issue for two reasons: (1) the Conners failed to present any evidence of an unreasonable or bad faith denial of payment; and (2) under Kentucky law the question of bad faith was properly one for the court and should therefore not have been submitted to the jury. *Id.* at 27–28.

Shelter appealed the judgment, charging insufficient evidence to support the finding that Shelter would have issued the policy even with full knowledge of the misrepresentation. The Conners cross-appealed, asserting that the district court erred in granting judgment notwithstanding the verdict on their bad faith claim, and in refusing to instruct the jury on punitive damages.

■ In diversity cases such as this, the court must look to state law to determine if the evidence is sufficient to withstand a motion for judgment notwithstanding the verdict. *Calhoun v. Honda Motor Co., Ltd.,* 738 F.2d 126, 129 (6th Cir.1984). In evaluating the sufficiency of the evidence under Kentucky law, the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion and a verdict should not be directed unless the evidence is insufficient to sustain the verdict. *Id.*

In this case, critical testimony was provided by Roger Ellingson (Ellingson) and Gene Brechler (Brechler), who were both senior underwriters in Shelter's Property Division in April, 1976, when the policy was issued to the Conners. Ellingson stated that he recalled a telephone conversation with Richard Vasseur (Vasseur), the field agent to whom Conner submitted an application. In that conversation, Ellingson authorized Vasseur to bind coverage for the

Conners. When asked, hypothetically, how he would have responded had he known that Conner had been convicted of a crime, Ellingson answered that he would have "asked for more information about the crime." Ellingson testified further, "I would not have given the verbal permission for the binder," if he had known that Conner "had been convicted of grand larceny, of cold checking, and of escaping from jail."

Brechler was the underwriter who approved the issuance of the Conners' policy. He testified that he would "have found out what had been the crime he [Conner] was convicted of," if Conner had responded truthfully in the application for insurance. When asked, hypothetically, whether he would have approved the application had he known that the crimes were "grand larceny, cold checking and escaping from jail," Brechler answered "no sir, I would have had to have declined the application."

Both Ellingson and Brechler testified that Shelter's underwriting rules for issuing homeowners policies, which were in effect at the time the Conners' policy was issued, would have mandated rejection of the application had they known the extent and nature of Ronald Conner's criminal record. Shelter's rules introduced at trial precluded the issuance of policies to "persons with poor credit reputation, such as a history of bad checks," and further prohibited coverage "[w]hen the applicant or a member of his household has been convicted for any offense other than traffic violations within the last 5 years."

■ In its opinion granting partial judgment notwithstanding the verdict, the district court set forth two reasons for sustaining the jury's finding on the issue of materiality. First, the district court relied upon the evidentiary disclosure that 10 days after issuing the homeowners policy to the Conners, Shelter approved and issued an automobile insurance policy to Ronald Conner. In his application for automobile insurance, Conner acknowledged that he had been convicted of driving while intoxicated. The district court reasoned

that issuance of the automobile insurance policy with knowledge of the conviction for DWI, "demonstrate[s] that Shelter Mutual issued insurance even when it knew of an applicant's prior convictions." 600 F.Supp. at 26. The district court further concluded that this evidence contradicted and provided a basis for discrediting the testimony of Shelter's underwriters.

However, this court concludes that the issuance of the automobile policy does not necessarily lend support to the determination that Shelter would have issued the homeowners policy had it known the true facts of Conner's criminal history. On his application for automobile insurance, Conner denied having "been arrested for any offense other than traffic violations." The record failed to disclose evidence that Shelter utilized the same rules for issuing automobile insurance and homeowners insurance. Even if Shelter followed the same guidelines for both types of coverage, those rules expressly precluded issuing insurance to persons who had "been convicted for any offense *other than traffic violations* within the last 5 years." (emphasis supplied).

The second basis upon which the district court relied for supporting the jury's finding regarding materiality was the testimony of Vasseur, a Shelter field agent. Vasseur testified as follows:

Q. Mr. Vasseur, I ask you to look at question # 4 that appears above the signature of Mr. Conner. I shall ask you hypothetically if Mr. Conner had answered that question # 4 concerning the crime, yes, what if anything would you have done?

A. Well it would have depended upon what those crimes were, and then if those crimes would not have fit into the company underwriting rules I would have told him that they did not fit into the company rules and that I would not have been able to provide the insurance.

Q. What if he had answered some crimes that you were not sure of? What would you have done?

A. If I wasn't sure about the risk then I would have checked with the underwriting department prior to binding the coverage.

The district court concluded that the foregoing testimony supported the contention that "past criminal convictions were not, contrary to Shelter Mutual's position, automatically conclusive on whether insurance would be issued." 600 F.Supp. at 26–27. In this regard, the district court improperly framed the issue as advanced by Shelter. Through the testimony of its underwriters, Shelter argued that the underwriters, in accordance with underwriting rules, would have refused insurance to an applicant who had been convicted of non-traffic offenses such as those for which Conner had been convicted. Rather than contradicting the testimony of Ellingson and Brechler, Vasseur's testimony was entirely consistent with that testimony. Vasseur testified that if certain crimes were involved, he would not have accepted the application, and if he were uncertain of the action to be taken, he would have first consulted with the underwriting department.

In sum, the district court failed to identify any evidence to support the jury's finding that Shelter would have issued the policy even had it known the true facts.

■ The Conners have asserted that the district court erred in granting judgment notwithstanding the verdict on their bad faith claim. The district court cited the recent Kentucky Court of Appeals case of *Feathers v. State Farm Fire & Casualty Co.*, 667 S.W.2d 693 (Ky.Ct.App.1983), *discretionary review denied*, (Ky.1984), which recognized a cause of action for unjustified denial of payment. This court concludes that the district court reasonably interpreted *Feathers* to impose on the claimant the burden of proving an unreasonable or bad faith denial of the claim. Shelter had denied payment only after learning that Conner had misrepresented material facts in the application for insurance by failing to fully disclose his extensive criminal record.

Regardless of whether the denial was correct, the Conners provided no evidence to demonstrate that the denial was unreasonable or in "bad faith." Accordingly, the district court properly granted judgment notwithstanding the verdict on the bad faith issue.

■ The Conners have lastly contended that the district court erred in refusing to instruct the jury on punitive damages. Punitive damages, however, are only awarded in the presence of "reckless" or "malicious" conduct. Examining Kentucky law on punitive damages, this court has stated:

Such damages are given only on account of the wanton, reckless, malicious or offensive character of the acts complained of.

*Signer v. First Nat'l Bank & Trust Co.,* 455 F.2d 382, 386 (6th Cir.1972). Having concluded that the district court correctly found an absence of bad faith, *a fortiori* this court finds that the district court properly rejected the Conners' claim for punitive damages.

For the foregoing reasons, the judgment of the district court is REVERSED as to its denial of Shelter's motion for judgment notwithstanding the verdict, which sought to overturn the jury's finding of an absence of material misrepresentation, and AFFIRMED as to the rejection of the Conners' claim of bad faith and for punitive damages.

NEESE, Senior (retired District) Judge, concurring specially and dissenting.

I concur with the majority except I would also affirm the District Judge's denial of the insurer's motion for judgment notwithstanding the verdict of the jury relating to the proceeds of the policy implicated.

The appellees made out a prima facie case against the defendant, and support for the defense of the insurer was dependent solely on the testimony of witnesses who were its employees with an employment interest; this created an issue of credibility and weight for determination by the jury, as the evidence they provided was hardly "possible of contradiction in the circum-

stances." *See Chesapeake & O. Ry. Co. v. Martin,* 283 U.S. 209, 218, 51 S.Ct. 453, 457, 75 L.Ed. 983 (1931). Federal R.Civ.P. 50 "has not taken away from juries and given to judges any part of the exclusive power of juries to weigh the evidence and determine contested issues of fact." *Berry v. United States,* 312 U.S. 450, 452–453, 61 S.Ct. 637, 638, 85 L.Ed. 945 (1941); *Wolfel v. Sanborn,* 555 F.2d 583, 593 (6th Cir. 1977) (District Judge not permitted to consider the credibility of evidence in determining motion for directed verdict).

The jury may have disregarded as unbelievable the defense witnesses and found specifically the fact that this insurer would have issued the policy even if it had known the true facts covered up by the misstatement of Mr. Conner. This "Court of Appeals can[not] redetermine facts found by the jury." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 358–359, 82 S.Ct. 780, 782, 7 L.Ed.2d 798 (1962) (a diversity case). I dissent respectfully from this part of the per curiam only.