39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Chad O'BRYAN, Plaintiff/Appellee,
v.
VOLKSWAGEN OF AMERICA, Defendant/Appellant.
 Nos. 93-5292, 93-5314.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1994.
 
 Before: SUHRHEINRICH, BATCHELDER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case is based on an automobile "crashworthiness" claim for injuries sustained when the 16-year old plaintiff, Chad O'Bryan, drove a 1987 Volkswagen Jetta off the road in excess of the 55-mile-per-hour speed limit. The plaintiff alleges that defects in the door latch and the passive restraint system caused or contributed to his injuries in this severe accident, during which the vehicle ran off the road at high speed, hit and climbed an embankment, rolled over, then struck three telephone-pole size logs while upside down, and "pole-vaulted" on one of the logs. The seat belt emergency release mechanism was crushed when one of the logs pierced the windshield on the driver's side. The log continued through the interior of the car, stretching the door frame and allowing the door to open. The plaintiff was thrown out of the car, and the car finally came to rest on him, crushing his eighth thoracic vertebra and rendering him a paraplegic. After trial in the district court, the jury returned a general verdict for $5,930,499.74, apportioning 85 percent of the fault to Volkswagen of America and Volkswagen AG (collectively referred to below as "Volkswagen") and 15 percent to the plaintiff.
 
 
 2
 Volkswagen seeks reversal of the judgment below, on the grounds that it was entitled to judgment as a matter of law. Volkswagen asserts that the plaintiff's proof was insufficient to establish either that a defect existed or that a defect, if one existed, caused Chad O'Bryan's injuries. Alternatively, Volkswagen seeks a new trial, claiming that the trial court (1) erroneously admitted into evidence a test which was not substantially similar to the circumstances of the accident and which was misrepresented as implicit in a federal safety standard; (2) allowed improper argument during plaintiff's counsel's closing argument; and (3) failed properly to instruct the jury. Volkswagen also asserts that plaintiff failed to exercise ordinary care, thus barring any recovery. The plaintiff counterclaims that, in the event that a new trial is granted, certain pretrial rulings by the district court should be reversed. The district court ruled prior to trial that federal regulations preempted any state law claim regarding the absence of a lap belt in the restraint system's design. The district court also refused, under Fed.R.Evid. 407, to allow evidence of subsequent remedial measures.
 
 
 3
 After a careful review of the record, we conclude that the plaintiff failed to establish causation and that the defendant, Volkswagen, is therefore entitled to a judgment in its favor as a matter of law. We thus pretermit discussion of those issues raised on appeal that are not directly related to causation.
 
 
 4
 On the evening of the accident, between 8:00 and 9:00 p.m., Chad O'Bryan was driving his mother's Volkswagen Jetta near Brandenburg, Kentucky. The speed limit on the segment of the highway where the accident occurred is 55 miles per hour. The Jetta was equipped with the VWRA passive restraint system, comprised of a two-point belt (right hip to left shoulder on the driver's side, attached to the door so that no affirmative action was needed to put it in place; the emergency release mechanism was near the door mounting), a specially designed seat (which minimized movement), and a "knee bolster" (a structure under the steering wheel designed to absorb and prevent forward movement through femoral contact). The system was thus totally passive. The seatbelt system utilized an ignition interlock system that prevented ignition when the seatbelt release was open. If the seatbelt was disengaged after the car was started, a warning light came on and a chime sounded. All of these systems were inspected after the accident and found to be operational, indicating that the seatbelt had not been disengaged prior to the accident.
 
 
 5
 The highway on which Chad O'Bryan was travelling curves to the left at the accident site.[1] Skid marks on the road indicated that he made a sudden steering change to the right, which caused the wheels to "yaw", or skid sideways. There was no evidence that the brakes had been applied. No mechanical problems were found with the Jetta that would have caused the accident. No other cars were involved in the accident.
 
 
 6
 After leaving the road, the car crossed over a ditch, struck an embankment, climbed the embankment, and struck two or three of a group of three large logs at the top of the embankment. At this point the car was upside down and moving forward. One log hit the roof of the car with such force that the roof was peeled back and upward on the driver's side. Another log came diagonally across the hood of the car from the right front corner, penetrated the upper left corner of the windshield, struck the seatbelt emergency release mechanism, and then hit the driver's side pillar. The car "pole-vaulted" on this log, stretching the door frame like a rubber band and releasing the door latch. The log was carried with the vehicle for approximately 55 feet. The log and vehicle then separated, and the rear of the car dug into the ground, causing it to rotate in the opposite direction. As the Jetta fell toward the ground, O'Bryan was ejected from the car. Moving slightly ahead of the vehicle, he came to rest on the ground and the Jetta finally landed on top of him. Estimates as to the total distance travelled by the vehicle (including yaw marks) varied from 260 feet to 282 feet. Estimates as to the initial speed of the vehicle varied concomitantly, from just over 55 miles per hour to 74. Plaintiff's experts characterized the accident as "minor to moderate", while defense experts described it as "extremely severe". One of Volkswagen's experts offered unrefuted testimony that the log that hit the driver's side of the car had a longitudinal force of over 10,000 pounds on impact.
 
 
 7
 At trial, the plaintiff advanced two design defect theories, alleging that absent the purported defects, there would have been no injury or the injuries would have been less severe. The first theory relates to the mounting of the seat belt and the positioning of the seat belt emergency release mechanism near the door. The plaintiff argued that the door-mounted belt was defective in that it offered no restraint if the door came open, a not uncommon occurrence in rollover accidents.[2] Plaintiff's experts testified that ejection of car occupants through opened doors was a leading cause of fatalities and serious injury. They also suggested that attachment to a motorized track above the door was "better" or "superior" to the Jetta's mechanism but, significantly, they did not establish that the alternate system would have prevented the harm in this accident. As Volkswagen argued, no proof was adduced to show that the motorized attachment would not have activated when the door flew open in this accident. The plaintiff's proof did make reference to a three-point design by General Motors, which like the VWRA is attached to the door. Again, no evidence was introduced to show that this alternate design would have ensured that the plaintiff remained in the car. Moreover, given the fact that one log peeled back the roof of the car and that the car continued to roll after that, it was incumbent upon the plaintiff to prove that he would have been injury-free if restrained in his seat. Our review of the record indicates that the issue of whether or not O'Bryan would have been injured had he remained in the car was raised, at least superficially, during the trial but was never established by competent proof one way or the other.
 
 
 8
 Plaintiff's experts also testified that, in their opinion, the emergency release mechanism should have been located between the two front seats, as with conventional active seat belt systems. Again, no proof was given that the seat belt would have remained intact if the emergency release mechanism had been located somewhere other than near the door mounting.
 
 
 9
 The plaintiff's second theory of defect relates to the design of the door latch. Plaintiff's experts claimed that the Jetta door latch was defective because it came open during the accident sequence. Plaintiff's experts also offered their opinion that stretching of the door,[3] caused by bending of the car's body during the rollovers, activated and released the latch mechanism. To determine this, the plaintiff's experts constructed a series of "door pull tests", which they performed on four Jetta doors. In this test, they removed the doors from the car bodies and bolted them by their hinges to heavy metal tables. They then pulled on the door striker with a cable, causing the door to stretch and thereby activating the latch. Through this process, they created damage similar to that of the subject door. They testified that the latch activated at a force of around 1600 pounds and that the door achieved a similar level of deformation at 1950 pounds. Plaintiff's experts then referred to Federal Motor Vehicle Safety Standard 206[4], which specifies requirements for automobile door latch strength, and implied that the Jetta door somehow failed to meet that standard. Clearly, however, the Jetta far exceeded that standard.
 
 
 10
 In determining whether the evidence is legally sufficient to support a jury verdict, the evidence, and the reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party. Fite v. First Tennessee Prod. Ass'n, 861 F.2d 884 (6th Cir.1988). A reviewing court may not consider the credibility of witnesses nor weigh the evidence, because to do so would "substitute the court's opinion for that of the jury. Frost v. Hawkins County Bd. of Educ., 851 F.2d 822, 826 (6th Cir.1987). In addition, a reviewing court may not set aside the jury verdict merely because the opposite conclusion could have been reached or because different inferences could have been drawn. Rather, we must determine whether any reasonable jury could have reached the verdict based on the evidence presented at trial. This same standard governs review of the district court's denial of a Rule 50(a) motion for judgment as a matter of law. Agristor Leasing v. A.O. Smith Harvestore Prods., 869 F.2d 264, 268 (6th Cir.1989).
 
 
 11
 Where a legal issue is presented, the de novo standard of review applies. Loudermill v. Cleveland Board of Education, 844 F.2d 304, 308 (6th Cir.), cert. denied, 488 U.S. 941, 946 (1988). In addition, where the relevant state supreme court has not spoken on an issue of state law, we are called upon to discern how that court would respond if confronted with the issue. Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985).
 
 
 12
 Volkswagen's principal contention on appeal is that the plaintiff failed to establish sufficient causal connection between the alleged defects and the injuries sustained by Chad O'Bryan. Under Kentucky law, the plaintiff has the burden of establishing that the circumstances surrounding the accident were such as to justify a reasonable inference of probability, rather than a mere possibility, that the alleged design defects were responsible for the injuries. Hersch v. U.S., 719 F.2d 873, 878 (6th Cir.1983) (quoting Perkins v. Trailco Mfg. and Sales Co., 613 S.W.2d 855, 857-58 (Ky.1981)).
 
 
 13
 It is, of course, within the jury's province to determine which expert to believe. Where expert testimony is supported by nothing more than conjecture and supposition, however, it is not entitled to be credited by the jury. Calhoun v. Honda Motor Co., 738 F.2d 126, 132 (6th Cir.1984) (applying Kentucky law). Hence, when the plaintiff's proof does not rise to the level of establishing that the alleged defect was the probable cause of the accident or the resulting injuries, but merely offers a possible cause in a series of possibilities, it is insufficient to establish liability. Id., at 133. Moreover, when alternate causes are presented that could have caused the plaintiff's injury, the burden is on the plaintiff to establish that the alleged defect is the probable, as opposed to a possible, cause. Midwestern Volkswagen Corp. v. Ringley, 503 S.W.2d 745 (Ky.1973).
 
 
 14
 In this case, the plaintiff does not claim that any defect caused the accident, but merely contends that he would have had no or fewer injuries if not for the alleged defects. This argument reflects a "crashworthiness" claim, such as that originally recognized in Larsen v. General Motors Corp., 391 F.2d 495, 503 (8th Cir.1968). Larsen has been widely followed in other jurisdictions but has not been applied by either the Sixth Circuit or the Kentucky courts.[5] In crashworthiness cases, courts deny recovery unless the plaintiff establishes, by competent expert testimony, that the defect was responsible to some degree for enhancement of injury to the plaintiff.[6] The plaintiff's proof in such cases must include competent evidence of some practicable, feasible, safer, alternative design. See, e.g., Caiazzo v. Volkswagenwerk, A.G., 647 F.2d 241, 250-51 (2nd Cir.1981); Huddell v. Levin, 537 F.2d 726, 737 (3d Cir.1976).
 
 
 15
 Volkswagen argues that the plaintiff has failed to prove two crucial aspects of his case: first, that absent either of the alleged defects, he would have remained uninjured or would have sustained a lesser injury and, second, that another design would have remedied the problems of which the plaintiff complains. Essentially, Volkswagen argues that no design could have withstood the forces to which the plaintiff's Jetta was subjected. Volkswagen points out, correctly, that although the plaintiff's experts opined that a motorized track or a three-point passive system is "better" or "superior", they failed to establish that a different restraint system would have prevented or diminished Chad O'Bryan's injuries.
 
 
 16
 Regarding the door latch, the plaintiff points to testimony that he was not injured while inside the Jetta, but was hurt only after ejection. The plaintiff infers that, had the door not opened and had he remained in the car, he would have come through the accident unharmed. In truth, one of the experts called by the plaintiff did testify that O'Bryan would have remained unharmed if he had not been ejected from the car, but this witness stated no basis for his opinion. Given the condition of the roof after the accident and the fact that the Jetta hit the ground at the terminus of its "pole vault" in an inverted position and continued to roll, this assertion appears to have no factual basis. Indeed, one of Volkswagen's experts testified that Chad O'Bryan would have experienced fatal head, brain, neck and chest injuries, based on the circumstances of the wreck and the ultimate condition of the car.
 
 
 17
 Moreover, the plaintiff proposed no alternate design for a more crashworthy door lock, nor did he address the possibility that the door opened because the surrounding structure stretched out of contact with the latch mechanism. The tension-type latch used in the Jetta is widespread in the industry, and even experts for the plaintiff testified that the Jetta's latch met the applicable federal standard, FMVSS 206. These experts, with their "pull test," essentially proposed a different, additional standard, one that would cover "the door as a whole" (removed from the door frame). However, there are no means to evaluate this proposed standard, or the Jetta's performance thereunder, absent broader data regarding existing practice within the industry.
 
 
 18
 Based on the evidence in the record before us, we conclude that the plaintiff failed to prove causation. A judgment entered in the defendant's favor as a matter of law would have been proper as to both of the plaintiff's theories. We therefore REVERSE the district court's judgment and enter judgment in favor of the defendant.
 
 
 
 [1]
 Plaintiff remembers nothing regarding the accident, and so all information as to the accident sequence comes from accident reconstruction techniques and witnesses
 
 
 [2]
 Volkswagen's experts testified that attachment of the seat belt to the door was another mechanism to hold the door shut in the event of a crash
 
 
 [3]
 Volkswagen's experts claimed that stretching of the door frame, rather than the door itself, allowed the door to open
 
 
 [4]
 FMVSS 206 is codified in 49 C.F.R. Sec. 571.206 and expressly prescribes that compliance be demonstrated by testing in accordance with paragraph 4 of Society of Automotive Engineers Recommended Practice, J839b. J839b contains a three-part test. The first part tests the ability of the latch to withstand "longitudinal load"; i.e., the "ability of the vehicle latch and striker ... to withstand a test load perpendicular to the face of the latch". The latch, when fully closed, and mounted in isolation according to specific procedures, must not be pulled apart by a load of 2500 pounds. The second part tests the ability of the latch to withstand a "transverse load"; i.e., the latch and striker must be able to withstand a load of 2000 pounds in the direction of the door opening. The third part tests the ability of the latch, when contained in the door latch system (including the door latch, striker assembly, outside handle, key cylinder and any connecting mechanisms), to remain fully latched when subjected to an inertia load of 30 grams in any direction. Plaintiff's experts subjected the "door latch system" to 1900 pounds, rather than 30 grams. The test process speaks to the same issue for which they purportedly tested. If the Jetta door latch system as a whole withstood 1900 pounds, it could surely have met the 30 gram requirement. Plaintiff's experts claimed that, at 1650 pounds pressure, the remote rod triggered the latch. The remote rod is a "connecting mechanism" within the meaning of the J839b procedure
 
 
 [5]
 The U.S. district court for the Eastern District of Tennessee has embraced the Larsen crashworthiness doctrine. Higgs v. General Motors Corp., 655 F.Supp. 22 (1985) (applying Tennessee law), aff'd without opinion, 815 F.2d 80 (1987). See also Wooten v. White Trucks, 514 F.2d 634 (5th Cir.1975) (applying Kentucky law and assuming a crashworthiness doctrine)
 
 
 [6]
 The trial court here instructed the jury to that effect, without objection from the plaintiff's counsel. The plaintiff nevertheless argues that this case is "not really a 'crashworthiness' case" but strictly a products liability case. He criticizes the concept of "enhanced injuries" employed in crashworthiness cases, on the ground that in some cases, injuries are indivisible and it is impossible to decide what injuries would have occurred absent the alleged defect. This argument is unpersuasive, particularly in light of Kentucky's statutory adoption of comparative fault, K.R.S. 411.182, which necessitates the same allocative process. Principles of comparative negligence apply to products liability actions under Kentucky law. Ingersoll-Rand Co. v. Rice, 775 S.W.2d 924, 930 (Ky.App.1989); see also, Reda Pump Co., Dir. of TRW, Inc. v. Finck, Ky., 713 S.W.2d 818 (Ky.1986). Hence, we conclude that use of a crashworthiness analysis does not conflict with existing Kentucky law