67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John THOMAS, Ethelen S. Thomas, husband and wife; David C.
Cook; Vicki Vaughn-Cook, husband and wife; Homer
Hackworth and Lydia Hackworth, husband
and wife, Plaintiffs-Appellants,
v.
MCDONNELL-DOUGLAS HELICOPTER COMPANY, a Delaware
corporation, Defendant-Appellee.
 No. 94-15219.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1995.
Decided Sept. 22, 1995.
 
 Before: CHOY, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs John and Ethelen Thomas, David C. and Vicki Vaughn-Cook, and Homer and Lydia Hackworth (collectively "Thomas") appeal the district court's grant of judgment as a matter of law in favor of defendant McDonnell-Douglas Helicopter Company ("McDonnell Douglas") following a jury verdict in Thomas' favor. Plaintiffs also appeal the district court's conditional grant of a motion for a new trial. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we reverse.
 
 
 3
 * Thomas argues that the district court erred in granting judgment as a matter of law in favor of McDonnell Douglas. We review this ruling de novo, Wilcox v. First Interstate Bank, 815 F.2d 522, 524-25 (9th Cir.1987), and we agree with Thomas.
 
 
 4
 The jury's verdict in favor of Thomas will be upheld if it is supported by substantial evidence. Id. at 525. We are not free to weigh the evidence or disregard the will of the jury if reasonable minds could differ over the verdict. See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1026 (9th Cir.1981), cert. denied, 459 U.S. 825 (1982). In determining whether the jury verdict in this case was supported by substantial evidence, we examine whether a reasonable person could find, based on the evidence at trial, that the fuel float assembly became tangled in the start pump wire causing the erroneous fuel reading and ultimately the crash.[1]
 
 
 5
 We are satisfied that substantial evidence supports the jury's verdict. Most compellingly, the McDonnell Douglas Model 369E helicopter crashed with no fuel in the tank, despite the fuel gauge indicating that 90 pounds of fuel remained. This fact alone is persuasive evidence of some defect in the fuel measuring system. Thomas then offered more specific evidence supporting his position regarding the nature of the alleged defect.
 
 
 6
 McDonnell Douglas had received various reports from helicopter users indicating that the design of the fuel tank could, if the start pump wire was not properly secured to the fuel hose, result in erroneous fuel gauge readings. Indeed, in a Service Information Notice ("EN-38") sent to owners of Model 369E helicopters in September of 1987, McDonnell Douglas indicated that "[t]here have been recent incidents where the fuel tank start pump wiring interfered with the [ ] fuel float after the start pump and fuel quantity sending unit had been replaced in the field. This interference can result in erroneous fuel quantity indications." The EN-38 also informed users that in order to prevent this problem, "the fuel pump wiring shall be wrapped around or tie-wrapped to the fuel inlet hose per the HMI [Helicopter Maintenance Manual]."
 
 
 7
 The jury then heard testimony from mechanics who examined Thomas' helicopter both before and after the crash. Roger Gagnon, the mechanic who performed the compliance with the EN-38, indicated that he usually used plastic tie-wraps to secure the start pump wire if the wire could not be wrapped at least twice around the fuel hose. While he could not specifically remember his work on the subject helicopter, he understood the EN-38 to permit the use of tie-wraps in the fuel tank.
 
 
 8
 Although McDonnell Douglas employee George Murrell testified that the start pump wire was usually wrapped twice around the fuel hose when a helicopter left the factory, the wire on Thomas' helicopter was not wrapped twice at the time of the crash.[2] A photograph taken of the inside of the fuel tank after the crash confirms that the start pump wire was wrapped only once around the fuel hose. At trial, McDonnell Douglas mechanic Jim Veal attempted to wrap the start pump wire twice around the fuel hose using an exact replica of the fuel tank, but was unable to do so.
 
 
 9
 Aircraft mechanic Wayne Ballard testified that, when he examined the helicopter after the crash, although the wire was looped over the fuel line, the EN-38 "was not complied with" at that time by the wrap around method, but rather might have been tie-wrapped at some time. Paul Shepherd, a mechanic, looked inside the fuel tank and noticed that the start wire was "kind of spiraled" and looked "like a piece of that Christmas candy."
 
 
 10
 Finally, Thomas presented the testimony of two experts. Keith Mackey, an aircraft mechanic, testified that tie-wraps used to secure wires can come loose for a variety of reasons. Mackey indicated that he had never before seen tie-wraps used in a fuel tank. Mackey further testified that if the start pump wire were wrapped twice around the fuel hose, the wire would not interfere with the fuel float assembly. Roger Boisjoly, an engineer, testified that in his opinion the design of the fuel indicating system was defective and the attempted repair of the system through the instructions contained in the EN-38 was negligent. Boisjoly also indicated that tie-wraps were not an acceptable method for securing the start pump wire. Boisjoly conceded that if the start pump wire was wrapped properly around the fuel hose, it would not be in a position to interfere with the float arm.
 
 
 11
 There was sufficient evidence for the jury to believe that when Gagnon complied with the EN-38, he was only able to wrap the wire once around the fuel hose and then tie-wrapped the slack at the top. Sometime during the helicopter's last flight, the tie-wrap came loose and the wire then was in a position to interfere with the fuel float assembly. A rational juror could find that, more probably than not, an improperly secured start pump wire was the cause of the crash and that McDonnell Douglas was both strictly liable for the design and manufacture of the system and negligent in permitting the use of tie-wraps to secure the start pump wire.[3]
 
 
 12
 The district court, in its order granting judgment as a matter of law, discounted much of Thomas' evidence, and credited all of McDonnell Douglas' evidence. It is the jury's role, not the district court's or ours to weigh the evidence. The jury's verdict was supported by substantial evidence, and we will not disturb it.
 
 II
 
 13
 McDonnell Douglas offers two other grounds by which we could affirm the trial court's grant of judgment as a matter of law. Neither has merit.
 
 
 14
 First, McDonnell Douglas argues that Thomas failed to establish that the product was defective when it left the manufacturer. A plaintiff in a products liability action must establish that the product was defective when it left the seller. Ky.Rev.Stat.Ann. Sec. 411.320 (Baldwin 1995); see Restatement (Second) of Torts Sec. 402A cmt. g. Liability is absent if the product has been altered or modified, even if that modification is foreseeable.
 
 
 15
 The Kentucky statute does not support judgment as a matter of law. The evidence at trial was controverted regarding the original condition of the start pump wire in the fuel tank. In any case, McDonnell Douglas' service instruction, the EN-38, allowed the use of tie-wraps to secure the wire, which the jury could have found to be a defective remedy and negligent. Although the Kentucky statute provided McDonnell Douglas an argument against liability, it is not a basis on which to grant judgment as a matter of law.
 
 
 16
 McDonnell Douglas next argues that judgment as a matter of law may be affirmed because the district court erred in admitting evidence of reports to McDonnell Douglas concerning other incidents where a start pump wire became tangled with the fuel float assembly on the same type of helicopter. We need not decide if the district court erred in admitting this evidence because even without the prior reports, there was sufficient evidence for a rational jury to find the element of causation. See Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988) ("court's evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent prejudice.").
 
 III
 
 17
 Thomas argues that the district court also erred in granting McDonnell Douglas a new trial. McDonnell Douglas, not surprisingly, disagrees and asks us to affirm the grant of a new trial. We cannot.
 
 
 18
 We review for abuse of discretion the district court's grant of a conditional order for a new trial. Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 190 (9th Cir.1989), cert. denied, 493 U.S. 1058 (1990). A district court should only enter an order for a new trial based on insufficiency of the evidence, however, if the jury's verdict is against the great weight of the evidence. Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir.1987).
 
 
 19
 Although McDonnell Douglas presented evidence supporting its position, the jury's verdict was not against the great weight of the evidence. Both parties presented plausible theories of causation, and the jury made its decision. No purpose would be served by a second trial. We conclude that the district court abused its discretion in granting a new trial.[4]
 
 REVERSED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This diversity case was tried in Arizona District Court applying Kentucky law. Under Kentucky law, once a plaintiff demonstrates that a product was defective, the plaintiff must establish causation. See Calhoun v. Honda Motor Co., 738 F.2d 126, 130 (6th Cir.1984). Causation may be proved by either direct or circumstantial evidence. Id. If a party relies on circumstantial evidence, "the evidence must be sufficient to tilt the balance from possibility to probability." Perkins v. Trailco Mfg. & Sales Co., 613 S.W.2d 855 (Ky.1981); Holbrook v. Rose, 458 S.W.2d 155, 158 (Ky.1970)
 
 
 [2]
 The evidence presented at trial did not conclusively indicate whether the wire was wrapped improperly at the factory or whether new equipment was installed in the fuel tank at some later time and the wrapping of the wire was changed then
 
 
 [3]
 McDonnell Douglas did present the jury with an alternate theory of crash causation involving Thomas' alleged blockage of a vent in the fuel tank. The jury, as is their prerogative, rejected this theory of causation
 
 
 [4]
 Because we reverse the district court's order granting judgment as a matter of law and conditionally granting a new trial, we need not address the admissibility of the National Transportation Safety Board report